IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 1:13-cr-00168-RBJ

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JOHN W. STITT,

    Defendant.

---

## PLEA AGREEMENT

---

The United States of America (the government), by and through Martha A. Paluch, Assistant U.S. Attorney for the District of Colorado, and the defendant, JOHN W. STITT, personally and by counsel, Christi A. Sanders, submit the following Plea Agreement pursuant to Fed. R. Crim. P. 11(c)(1)(A) and D.C.COLO.LCrR 11.1.

### I.   AGREEMENT

A.    The defendant agrees to plead guilty to Count 39 of the Indictment, charging a violation of 18 U.S.C. § 641, Theft of Government Funds.

B.    The defendant agrees that restitution in the amount of $236,187.70 is owed by him to the Social Security Administration, and that his sentence should include an order requiring that he make restitution.

C.    The government agrees that it will dismiss the remaining counts of the Indictment, Counts 1 through 38 and Count 40, at the time of sentencing on Count 39.

D.    The government agrees to recommend that the Court give the defendant full credit for acceptance of responsibility per USSG §§ 3E1.1(a) and 3E1.1(b), unless


COURT EXHIBIT 1

the defendant engages in conduct that qualifies for the obstruction of justice enhancement under §§ 3C1.1 and 3E1.1, comment (note 4) between the time of his guilty plea and sentencing.

E.  This plea agreement constitutes the entire agreement between the defendant and the government with respect to the defendant's guilty plea, and no other promises, representations, or inducements have been made to the defendant or the defendant's attorney.

## II.  ELEMENTS OF THE OFFENSE(S)

The parties agree that the elements of the offense to which this plea is being tendered are as follows:

### A.  Theft of Government Funds (18 U.S.C. § 641)

To prove a violation of 18 U.S.C. § 641, the government must prove the following elements:[1]

*First*:  the funds belonged to the United States government;

*Second*:  the defendant converted the government funds intending to put it to his own use or gain or the defendant took the government funds knowing it was not his and intending to deprive the owner of the use or benefit of the government funds;

*Third*:  the value of the government funds was more than $1,000.

## III.  STATUTORY PENALTIES

The parties agree that the statutory penalties of the offense to which this plea is being tendered are as follows:

---

[1] 10th Cir., Criminal Pattern Jury Instructions, No. 2.31 (2011) (modified).

2

### A.     Theft of Government Funds (18 U.S.C. § 641)

The maximum statutory penalty for a violation of 18 U.S.C. § 641   is: not more than 10 years imprisonment and not more than $250,000 fine, or both; not more than 3 years supervised release; $100 special assessment fee; plus applicable restitution.

The conviction may cause the loss of civil rights, including but not limited to the rights to possess firearms, vote, hold elected office, and sit on a jury.   If probation or supervised release is imposed, a violation of any condition of probation or supervised release may result in a separate prison sentence and additional supervision.

### IV.   STIPULATION OF FACTS

The parties agree that there is a factual basis for the guilty plea that the defendant will tender pursuant to this plea agreement. That basis is set forth below. Because the Court must, as part of its sentencing methodology, compute the advisory guideline range for the offense of conviction, consider relevant conduct, and consider the other factors set forth in 18 U.S.C. §3553, additional facts may be included below which are pertinent to those considerations and computations. To the extent the parties disagree about the facts set forth below, the stipulation of facts identifies which facts are known to be in dispute at the time of the execution of the plea agreement.

This stipulation of facts does not preclude either party from hereafter presenting the Court with additional facts which do not contradict facts to which the parties have stipulated and which are relevant to the Court's guideline computations, to other 18 U.S.C. §3553 factors, or to the Court's overall sentencing decision.

The parties agree that the date on which relevant conduct began is in or around October 1986.

The parties agree as follows:

The Social Security Administration ("SSA") is an agency of the United States government that administers the Retirement Insurance Benefits ("RIB") program under Title II of the Social Security Act. The RIB program provides monthly cash payments to individuals who are at least 62 years of age and have earned sufficient Social Security credits to be insured under the Social Security Act.

Helen L. Stitt (born January 7, 1908) was a recipient of RIB benefits under Title II of the Social Security Act, beginning in January 1973. Helen Stitt's monthly RIB benefit payments were paid by SSA via direct deposit into her First National bank account ending in 2113, which later became a JP Morgan Chase bank account ending in 2114.

In March 1986, John W. Stitt, Helen Stitt's nephew, was added as an authorized signer on Helen Stitt's First National Bank account ending in 2113.

On October 12, 1986, Helen Stitt passed away at the age of 78. John Stitt was listed as the informant on Helen Stitt's Colorado death certificate.

Following her death in October 1986, Helen Stitt's monthly RIB benefit payments continued to be deposited into her First National/JP Morgan Chase bank account, upon which John Stitt had been added as an authorized signer approximately seven months prior to her death. For a period of approximately 25 years – from October 1986 through November 2011, John Stitt continued to receive his deceased aunt's RIB

benefit payments that had been deposited into her bank account. During that period of time, John Stitt periodically wrote personal checks bearing his deceased aunt's name and bank account information to himself and then signed the check himself as an authorized signer on his deceased aunt's bank account in order to convert these government funds to his own personal use or gain. John Stitt failed to notify SSA that his deceased aunt was still receiving RIB benefit payments following her death.

In total, John Stitt converted $236,187.70 in RIB benefits intended for his deceased aunt while intending to put these government funds to his own use or gain and while knowing these government funds were not his and intending to deprive the owner of the use or benefit of the government funds.

## V.   ADVISORY GUIDELINE COMPUTATION AND 3553 ADVISEMENT

The parties understand that the imposition of a sentence in this matter is governed by 18 U.S.C. §3553. In determining the particular sentence to be imposed, the Court is required to consider seven factors. One of those factors is the sentencing range computed by the Court under advisory guidelines issued by the United States Sentencing Commission. In order to aid the Court in this regard, the parties set forth below their estimate of the advisory guideline range called for by the United States Sentencing Guidelines. To the extent that the parties disagree about the guideline computations, the recitation below identifies the matters which are in dispute.

A.   The base guideline for Count 39 of the Indictment is § 2B1.1(a)(2) with a base offense level of **6**.

B.  The base guideline is increased by **12** based on the loss amount, which is more than $200,000 but less than $400,000, pursuant to USSG § 2B1.1(b)(1)(G).  **+12**

C.  There are no other specific offense characteristics, victim-related, role-in-the offense, or multiple count adjustments.

D.  The adjusted offense level would therefore be **18**.

E.  The parties agree that the defendant should receive a **3** level decrease for acceptance of responsibility, pursuant to §§ 3E1.1(a), (b).  **-3**

F.  The resulting offense level would therefore be **15**.

G.  The parties understand that the defendant's criminal history computation is tentative.  The criminal history category is determined by the Court based on the defendant's prior convictions.  Based on information currently available to the parties, it is estimated that the defendant's criminal history category would be **I**.

H.  The career offender/criminal livelihood/armed career criminal adjustments would not apply.

I.  The advisory guideline range resulting from these calculations is **18-24** months.  However, in order to be as accurate as possible, with the criminal history category undetermined at this time, the offense level(s) estimated above could conceivably result in a range from **18** months (bottom of Category I) to **51** months (top of Category VI).  The guideline range would not exceed, in any case, the cumulative statutory maximums applicable to the counts of conviction.

J.   Pursuant to guideline § 5E1.2, assuming the estimated offense level above, the fine range for this offense would be **$4,000** to **$40,000**, plus applicable interest and penalties.

K.   Pursuant to guideline § 5D1.2, if the Court imposes a term of supervised release, that term is not more than 3 years.

L.   The parties agree that, pursuant to guideline § 5E1.1, restitution in the amount of **$236,187.70** is owed by the defendant to the Social Security Administration. The Court may order restitution in any criminal case to the extent agreed to by the parties in a plea agreement. See 18 U.S.C. § 3663(a)(3).

The parties understand that, although the Court will consider the parties' estimate, the Court must make its own determination of the guideline range. In doing so, the Court is not bound by the position of any party.

No estimate by the parties regarding the guideline range precludes either party from asking the Court, within the overall context of the guidelines, to depart from that range at sentencing if that party believes that a departure is specifically authorized by the guidelines or that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the United States Sentencing Commission in formulating the advisory guidelines. Similarly, no estimate by the parties regarding the guideline range precludes either party from asking the Court to vary entirely from the advisory guidelines and to impose a non-guideline sentence based on other 18 U.S.C. §3553 factors.

The parties understand that the Court is free, upon consideration and proper application of all 18 U.S.C. §3553 factors, to impose that reasonable sentence which it deems appropriate in the exercise of its discretion and that such sentence may be less than that called for by the advisory guidelines (in length or form), within the advisory guideline range, or above the advisory guideline range up to and including imprisonment for the statutory maximum term, regardless of any computation or position of any party on any 18 U.S.C. §3553 factor.

## VI.  ENTIRE AGREEMENT

This document states the parties' entire agreement.  There are no other promises, agreements (or "side agreements"), terms, conditions, understandings, or assurances, express or implied.  In entering this agreement, neither the government nor the defendant has relied, or is relying, on any terms, promises, conditions, or assurances not expressly stated in this agreement.

Date: 11/06/2013

JOHN W. STITT
Defendant

Date: 11/6/2013

CHRISTI A. SANDERS
Attorney for Defendant

Date: 11/7/13

MARTHA A. PALUCH
Assistant U.S. Attorney